AO 106 (Rev. 04/10) Application for a Search Warrant

E-FILED
Wednesday, 14 November, 2018 03:57:15 PM
Clerk, U.S. District Court, ILCD



# UNITED STATES DISTRICT COURT

for the
Central District of Illinois

In the Matter of the Search of                     )
*(Briefly describe the property to be searched*     )
*or identify the person by name and address)*       )     Case No. 18-MJ-
                                                    )
618 County Road 100 E., Ivesdale, Illinois 61851    )          7172
                                                    )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____Central_____ District of _____Illinois_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of methamphetamine |

The application is based on these facts:
See affidavit of DEA Special Agent Martin Santoyo

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/MARTIN SANTOYO
_____
*Applicant's signature*

Martin Santoyo, DEA Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

s/ERIC I. LONG

Date: 11/14/2018
_____

_____
*Judge's signature*

City and state: Urbana, IL

Eric I. Long, United States Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| IN THE MATTER OF THE SEARCH OF | Case No. 18-MJ-7172 |
| --- | --- |
| 618 County Road 100 E., Ivesdale, Illinois 61851 | |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Martin Santoyo, being first duly sworn, hereby depose and state as follows:

1.     I am a Special Agent with the Drug Enforcement

Administration, and have been since September 2016.  I am currently

assigned to the Springfield Resident Office ("SRO"), Springfield, Illinois, in

an enforcement group investigating violations under Titles 18 and 21 of

the United States Code. Prior to my employment with the DEA, I was

employed as a Legal Investigator with the Will County Public Defender's

Office in Joliet, Illinois, for approximately 3 years. I attended the DEA

Basic Agent training in Quantico, Virginia. During that period, I was

trained in the investigation of controlled substances under federal law,

including but not limited to drug identification, writing reports, court

testimony, tactical operations and defensive tactics, evidence collection,

and undercover operations.

2.     The information contained in this affidavit is based upon my

personal knowledge of this investigation, and upon information provided

by other law enforcement personnel. This affidavit does not contain all of

1

the facts known to agents, only those believed to be necessary to establish probable cause.

3.  This affidavit is submitted in support of an application for a warrant to search the entire premises, including the detached garage and any outbuildings on the property, located at **618 County Road 100 E., Ivesdale, Illinois 61851** (hereinafter "**SUBJECT PREMISES**"), which is more particularly described in Attachment A and Attachment B. Specifically, the probable cause section details information that this address contains evidence of violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

4.  Based upon the following information there is probable cause to believe that located within the SUBJECT PREMISES there is currently evidence, fruits, and instrumentalities of illegal drug trafficking and/or money laundering, including:

    a.  Illegal controlled substances;

    b.  Substantial amounts of currency; possibly contained in safes, lock-boxes or other security containers;

    c.  Books, receipts, notes, ledgers, cellular telephones, computer or electronic organizer files, or other records in any form evidencing the ordering, purchase, receipt, sale, or distribution of controlled substances and/or currency collected from controlled substance transactions, including present or past debts owed to or from other persons;

2

d.      Financial records and other items relating to obtaining, transferring, depositing, withdrawing, converting, or storing large amounts of currency, or spending large sums of money in cash or other forms, including, but not limited to, such items and records as jewelry, precious gems, safe deposit box keys, money wrappers, invoices, sales receipts, receipts relating to the purchase of financial instruments and the transfer of funds, records of real estate transactions, statements of account, deposit slips, money orders and cashier's checks and related receipts, canceled checks, check registers, passbooks, other records from financial institutions, ledgers, financial statements, stock certificates, bonds, other financial instruments, credit card records, and vehicle titles;

e.      Books, notes, or other records containing personal notations of names, addresses, telephone numbers, currency notations, insurance information or other information related to the distribution of controlled substances or monetary transactions;

f.      Tickets, car rental receipts, schedules, notes, or other records evidencing travel outside the immediate municipal area;

g.      Photographs of other persons, property, currency or controlled substances constituting evidence of associations between persons participating in controlled substance trafficking;

3

h.    Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and,

i.    Telephone records, bills and receipts of purchase;

j.    Computers, computer hardware or software, computer printers, computer storage devices, computer peripheral devices that allow users to enter or retrieve data from storage devices, all magnetic storage devices as well as the central processing unit (CPU);

k.    Cellular telephones and cellular telephone content;

l.    Firearms and ammunition;

m.    Paraphernalia for weighing, diluting, packaging, and distributing illegal controlled substances including, but not limited to, scales, plastic bags with missing corners, grinders, sifters, and diluting agents.

## PROBABLE CAUSE

5.    In January of 2018, the DEA SRO acquired a Confidential Source (hereinafter "CS") who had been arrested, but not formally charged, for possessing/transporting methamphetamine and heroin. The CS cooperated with authorities in an effort to see reduced charges for that conduct. The CS was not formally charged, and now continues to work for DEA SRO for monetary reasons. The CS is controlled by the

4

DEA. The CS has provided reliable information during this and other investigations in the Champaign and Vermilion Counties, Illinois area. The CS has several prior felony drug trafficking and firearm possession convictions.

6.     In October of 2018, the CS indicated an individual named "Neil" was involved in the illegal distribution of "ice" methamphetamine in Champaign County, Illinois. The CS provided an address for "Neil" as "618 N. 100 E." in Champaign County, Illinois. The CS indicated "Neil" sells an ounce of methamphetamine for $850. The CS indicated "Neil" to possibly be "Neil Quick" or "Neil Quicks".

7.     On October 14, 2018, I debriefed the CS. I provided the CS with an Illinois Secretary of State Image of Neil QUICK (M/W DOB: 07/27/1973) with identifiers hidden. The CS positively identified the photo image as who the CS knows to be "Neil". It should be noted that Illinois Secretary of State Records for QUICK indicate an address of 618 County Road 100 E., Ivesdale, Illinois 61851 (SUBJECT PREMISES).

8.     After receiving the CS's information, we attempted to test this information by using the source to record phone calls/text messages with QUICK. The goal of this operation was to arrange a controlled purchase of methamphetamine.

9.     On October 30, 2018, DEA SRO in conjunction with the Champaign Street Crimes Task Force (CSCTF) formulated a plan to utilize DEA CS to purchase purported methamphetamine from QUICK,

5

utilizing $2,400 DEA Official Advanced Funds (OAF) in Champaign County, Illinois.

10.    At approximately 3:13 p.m., agents met with the CS at the Pre-Arranged Location (PAL) in anticipation of the controlled purchase of purported methamphetamine from QUICK. The CS and CS's vehicle were searched for contraband with negative results. The CS was provided with $2,600 DEA OAF, and audio/video recording equipment was utilized during this operation. The CS had arranged the transaction by placing recorded calls/texts to QUICK (identified by CS).

11.    At approximately 3:57 p.m., surveillance units observed the CS's vehicle arrive at the SUBJECT PREMISES. Moments later, surveillance units observed the CS exit the CS's vehicle. At approximately 4:06 p.m., surveillance units observed the CS's vehicle departing the SUBJECT PREMISES. Agents followed the CS back to the PAL.

12.    At approximately 4:19 p.m., the CS arrived at the PAL. Agents turned off the audio/video recording devices. I retrieved a clear plastic baggie containing purported methamphetamine from the CS's vehicle and the CS returned $200 in DEA OAF. The CS and CS's vehicle were searched for contraband with negative results.

13.    At approximately 4:23 p.m., agents debriefed the CS. The CS advised that once he/she arrived at the SUBJECT PREMISES, the CS walked inside and conducted the drug transaction with QUICK in the kitchen of the residence. The CS reported he/she provided QUICK with

the $2,400 and QUICK provided the CS with a clear plastic baggie
containing purported methamphetamine. Agents later reviewed the
audio/video recording, which was consistent with what the CS reported.

14.     The suspected methamphetamine was field-tested by DEA
SA Santoyo, which field-tested positive for the presence of
methamphetamine. The exhibit is currently at the DEA North Central
Laboratory pending further analysis.

15.     On November 8, 2018, DEA SRO in conjunction with the
Champaign Street Crimes Task Force (CSCTF) formulated a plan to
utilize DEA CS to purchase purported methamphetamine from QUICK,
utilizing $1,600 DEA Official Advanced Funds (OAF) in Champaign
County, Illinois. The CS had arranged the transaction by placing
recorded calls/texts to QUICK.

16.     At approximately 2:00 p.m., agents met with the CS at the
PAL. The CS and CS's vehicle were searched for contraband with negative
results. The CS was provided with $1,600 DEA OAF.

17.     At approximately 3:06 p.m., agents observed the CS's vehicle
arrive at the SUBJECT PREMISES. Agents observed the CS's vehicle to
be parked on the east side of the SUBJECT PREMISES. At approximately
3:17 p.m., agents observed the CS walking out of the SUBJECT
PREMISES. Agents followed the CS back to the PAL.

18.     At approximately 3:32 p.m., the CS arrived back at the PAL
with agents. I obtained a clear plastic baggie containing purported

methamphetamine from the CS vehicle. The CS and CS's vehicle were searched for contraband with negative results. Moments later, agents debriefed the CS. The CS stated he/she conducted the drug transaction with QUICK inside the residence (SUBJECT PREMISES). The CS reported providing QUICK with the $1,600, and QUICK providing the CS a clear plastic baggie containing purported methamphetamine. Agents later reviewed the audio/video recording, which was consistent with what the CS reported.

19.    The suspected methamphetamine was field-tested by DEA SA Santoyo, which field-tested positive for the presence of methamphetamine. The exhibit is currently at the DEA North Central Laboratory, analysis pending.

## CONCLUSION

20.    Because this investigation is ongoing and its success would be jeopardized if its contents of this Affidavit were made public at this time, I am requesting that this Affidavit and the accompanying search warrant documents be sealed until further court order.

21.    Based upon my training and experience in investigating illegal drug trafficking organizations, including their financial operations, my discussions with other law enforcement agents, and during investigative interviews and my participation in the execution of other search warrants, I know:

a. Persons and organizations illegally trafficking in controlled substances generally have large amounts of currency on hand in a location to which they have ready access and which they believe to be secure, since the illegal nature of drug transactions causes them to almost always be conducted in cash.

b. Persons and organizations trafficking illegally in controlled substances usually maintain books, receipts, notes, ledgers, or other forms of records relating to the ordering, purchase, receipt sale, or distribution of controlled substances. Drug traffickers commonly obtain and/or distribute controlled substance on a "front" (consignment) basis, and must keep track of money owed by and to them. Records of those and other transactions are typically maintained in locations to which the drug traffickers have ready access and which they believe to be secure.

c. The large amount of currency involved in and derived from illegal drug trafficking commonly leads to a variety of financial transactions relating to obtaining, transferring, depositing, withdrawing, converting, or storing large amounts of currency, and spending large sums of money in cash and other forms. It is common for drug traffickers to maintain records, receipts, and other evidence of such

9

expenditures and financial activities, including such items

such as jewelry, precious gems, safe deposit box keys, and

money wrappers, as well as invoices, sales receipts, receipts

relating to the purchase of financial instruments and the

transfer of funds, records of real estate transactions,

statements of account, deposit slips, money orders and

cashier's checks and related receipts, canceled checks, check

registers, other records from financial institutions, ledgers,

financial statements, stock certificates, bonds, other

financial instruments, credit card records, and similar

receipts and records.

d.  Because large expenditures of cash by someone with no

apparent legitimate source for that much currency can

arouse suspicions and lead to reports to and investigations

by law enforcement agencies, drug traffickers commonly

engage in various financial transactions designed to disguise

the source of their drug money or to convert it into some

apparently legitimate asset or form of income so it can be

spent or transferred without attracting the attention of law

enforcement authorities, which is commonly referred to as

"money laundering." Records of such financial transactions

are typically retained by the traffickers and include invoices,

sales receipts, receipts relating to the purchase of financial

instruments and the transfer of funds, records of real estate transactions, statements of account deposit slips, money orders and cashier's checks and related receipts, canceled checks, check registers, other records from financial institutions, ledgers, financial statements, stock certificates, bonds, other financial instruments, credit card records, and similar receipts and records.

e. As part of such money laundering activities, illegal drug traffickers often purchase and/or title their assets in fictitious names or aliases, or in the names of relatives, associates, or business entities to avoid detection of those assets and their true ownership by the government and law enforcement agencies, Even though such assets are in names other than the drug traffickers actually own and continue to use these assets, and exercise dominion and control over them. Therefore, the records and receipts described above are often in the names of nominees.

f. Persons and organizations illegally trafficking in controlled substances usually maintain books, notes, or other records containing personal notations of names, addresses, and/or telephone numbers of their drug customers, suppliers, distributors, couriers, and other criminal associates.

11

g. Persons involved in illegal drug trafficking very often travel to other locations to meet with suppliers, other drug distributors, associates, or customers, and subsequently retain records of that travel such as receipts for expenditures such as the purchase of fuel at service stations or meals, copies of tickets or receipts for public transportation, transportation or travel schedules, car rental agreements and receipts, and other notes.

h. Persons involved in illegal drug trafficking often take or keep photographs of their drug associates, property, or drug product. Those photographs are usually maintained at their residences or places of drug business.

i. Persons involved in illegal drug trafficking usually maintained the substantial amounts of currency, other assets, and various types of records described above in secure locations to which they have ready access and over which they have control, directly or through others, such as their homes. This methamphetamine distribution investigation has established that QUICK resides at 618 County Road 100 E., Ivesdale, Illinois 61851.

22.  I respectfully submit this affidavit establishes probable cause for a Search Warrant for the residence located at 618 County Road 100 E., Ivesdale, Illinois 61851.

Further, affiant sayeth not.

s/MARTIN SANTOYO

_____

Martin Santoyo, Special Agent
Drug Enforcement Administration

Sworn to before me this

14th day of _November_, 20 18

s/ERIC I. LONG

_____

HONORABLE ERIC I. LONG
United States Magistrate Judge
Central District of Illinois

13

**ATTACHMENT A**

The SUBJECT PREMISES is described as a single story trailer house clad in tan siding and red/brown in color shingles, located at 618 County Road 100 E., Ivesdale, Illinois 61851. The main entrance of the SUBJECT PREMISES faces the south with a secondary entrance facing the east. There is also a detached garage to the east of the SUBJECT PREMISES. The numbers "618 100 E" are affixed to a post near the mailbox on the west side of the property near the driveway of the residence by the road.  The SUBJECT PREMISES contains multiple out buildings. The property also has the approximate Global Positioning System (GPS) coordinates of 39.970068, -88.444108.

**ATTACHMENT B**





